IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TOCKCEY SMITH,
     Plaintiff,

     v.

AUTOTRADER.COM, INC.,
     Defendant.

Civil Action File

No.: _____

JURY TRIAL DEMANDED

## **COMPLAINT**

COMES NOW Plaintiff Tockcey Smith (hereinafter, "Plaintiff"), and hereby shows as follows:

1. This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981").

## I.    **THE PARTIES**

2. Plaintiff is a natural person and is now and was at all times relevant to this action a citizen of the United States entitled to bring lawsuits of this type and

1

nature.  Plaintiff is now and was at all times relevant to this action a resident of the State of Georgia.  Plaintiff submits to the jurisdiction of this Court.

3.  Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about November 24, 2020.  On or about September 30, 2021, the EEOC issued him a notice of Right to Sue on that Charge.  Copies of that Charge and Notice are attached to this complaint as Exhibits 1A and 1B, respectively.

4.  Plaintiff was formerly employed as a P2 User-Interface Engineer by Autotrader.com, Inc.  He was constructively discharged on May 29, 2020.

5.  Defendant Autotrader.com, Inc. (hereinafter, "Defendant" or "Autotrader") is a corporation organized under the laws of Delaware with its principal place of business at 6205-A Peachtree Dunwoody Road, Atlanta, Georgia 30328.

6.  Defendant can be served with a copy of the summons and complaint by personal service of its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7.  Defendant was Plaintiff's employer until his constructive discharge on May 29, 2020.

## II.    JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

9. Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred in this District.

## III.    FACTUAL ALLEGATIONS

10. Plaintiff began work for Defendant on July 8, 2019, as a P2 User-Interface Engineer.

11. Plaintiff's supervisor was Sabrina Lick, a white woman.

12. Plaintiff was the only African-American employee in his team or anywhere along his chain of command.

13. The majority (>75%) of Plaintiff's coworkers were Caucasian.

14. Ms. Lick did not meet in person with Plaintiff until September 5, 2019.

15. On December 4, 2019, Plaintiff and Ms. Lick met to discuss Plaintiff's progress as a new employee.  Ms. Lick's summation of Plaintiff's performance was that "[he] just doesn't understand."  When pressed for more details on what Plaintiff did not understand, Ms. Lick responded, "sorry, but I don't have anything concrete right now."

16. The next day, on December 5, 2019, Plaintiff wrote and delivered a letter to Human Resources representative Debbie Revell, a white woman, concerning Plaintiff's concerns of Ms. Lick's racial bias, based on his December 4 meeting with her.

17. Ms. Lick requested a 1-on-1 meeting with Plaintiff on December 16, 2019. Plaintiff forwarded this meeting request to Ms. Revell in Human Resources, who advised that Ms. Lick is "looking for some concrete details" to substantiate her statement that "[Plaintiff] just doesn't understand."

18. Ms. Lick was, at this time, searching for post hoc support for her unsupported claim that "[Plaintiff] just doesn't understand."

19. During Plaintiff and Ms. Lick's 1-on-1 meeting, Ms. Lick provided reasons for her statement that included Plaintiff asking for clarification from a presenter about where the presenter was pointing on his slideshow, and Plaintiff providing advice on how to use the free (as opposed to commercial) license of a software tool to his teammates to reduce Defendant's overhead expenses.

20. On or about December 31, 2019, Ms. Revell called Plaintiff to state that there had been misunderstandings between Ms. Lick and Plaintiff, and that those

misunderstandings were Ms. Lick's fault for having only meeting with Plaintiff, a new employee, three times in his first six months working for her.

21. During the first six months of Plaintiff's employment with Defendant, Defendant routinely failed to invite Plaintiff to meetings to which all other team members were invited.

22. On or about November 7, 2019, Defendant did not invite Plaintiff to a meeting regarding <webpagetest.org>.

23. On or about November 14, 2019, Defendant did not invite Plaintiff to a meeting regarding Akamai routing for SYC microsites.

24. On or about January 7, 2020, Defendant did not invite Plaintiff to a team meeting of all of Plaintiff's coworkers.

25. During Plaintiff and Ms. Lick's fourth-quarter employee review, Ms. Lick asked Plaintiff if anything was on his mind after their interactions with Human Resources.  Plaintiff stated that he did not like that he was being graded based on "word of mouth" from other coworkers, as opposed to Ms. Lick's direct observations of his work.  Ms. Lick stated that when reviewing employees, she talks to all members of the team to come to a consensus.

26. Ms. Lick asked other coworkers about their appraisal of Plaintiff.

27. Ms. Lick never asked Plaintiff about his appraisal of any other coworker.

28. On or about January 23, 2020, Plaintiff had a 1-on-1 meeting with Justin Coffman, Ms. Lick's direct supervisor.  During that meeting, Mr. Coffman agreed with Plaintiff that Ms. Lick's treatment of him, including only meeting with him three times over his first six months, was deficient.

29. Plaintiff and Ms. Lick began having recurring 1-on-1 meetings to discuss Plaintiff's progress as a new employee.

30. On or about January 24, 2020, Plaintiff and Ms. Lick met, and Ms. Lick had no negative feedback to provide.

31. On or about February 7, 2020, Plaintiff and Ms. Lick met, and Ms. Lick stated that she had heard from coworkers that Plaintiff "needed handholding."  When asked for improvement items or specificity in how Plaintiff needed handholding, Ms. Lick stated that she did not know which projects coworkers were complaining about.

32. Plaintiff had not been asked to review the shared work of other employees prior to this meeting, as other employees had apparently been asked to review his.

33. Also, on or about February 7, 2020, Plaintiff received a direct message from an employee in User Experience whose responsibility was to review Plaintiff and his coworkers' products.  This employee asked where the "pop up"

component of a project disappeared to.  The "pop up" component was not a part of Plaintiff's responsibility, as it was supposed to have been completed in an earlier stage by a white coworker.  The white coworker had failed to implement the "pop up" component, but the white coworker's work had passed Code Review (an inspection and approval stage) and been marked as "Complete."   The missing component was then negatively ascribed to Plaintiff.

34. On or about February 17, 2020, Ms. Lick privately messaged Plaintiff to ask why he had not participated more in a meeting they had earlier that day.  Plaintiff had asked a question at one point, which was more than his white coworkers had participated.  Despite this, Plaintiff was the only one of Ms. Lick's reports who was criticized for failing to participate.

35. During their 1-on-1 meeting on or about February 21, 2020, Ms. Lick stated that she was considering rating Plaintiff as "off track" due to having to "carry over" work from task period to task period.  Plaintiff had not had to carry over any work from the preceding period to the current one, whereas a white coworker, Sara Hubbard, had carried over work from quarter three of 2019, quarter four of 2019, and quarter one of 2020.  Ms. Hubbard was not rated "off track" for carrying over work.

36. Also, on February 21, 2020, Plaintiff again made a report of discrimination highlighting the disparate treatment he was being provided by Ms. Lick compared to employees of other races.

37. Defendant assigned disproportionate amounts of work to Plaintiff compared to his white coworkers.

38. On or about March 6, 2020, Ms. Lick assigned four "Trim UI" tasks to Plaintiff. Plaintiff's white coworker received only one.

39. On or about March 11, 2020, three senior employees assigned Plaintiff a total of sixty-two "Code Review" tasks.  When Plaintiff requested that anyone on the team who was not working at capacity help out with even just a couple, he received no support.  On or about March 12, 2020, a white coworker, Michael Rock, acknowledged that "62 is a lot of Code Reviews to get done by March 16."

40. On or about March 18, 2020, Ms. Lick requested that Plaintiff check in with her every thirty minutes with an update on what he was working on.  Ms. Lick made no such request of any of the other employees on the team.

41. On or about March 20, 2020, Plaintiff again complained to Ms. Revell in Human Resources that he was being subjected to disparate treatment from Ms. Lick based on his race.

42. During the period of March 19 – 24, 2020, Ms. Lick and other senior employees repeatedly publicly criticized Plaintiff's ability to work efficiently.

43. On March 19, 2020, Ms. Lick privately messaged Plaintiff to say "As you heard, [Michael] Rock's confidence in your ability to deliver is decreasing with each story you take on. This is again a very minor story that you had a large chunk of yesterday to work on."

44. On March 24, 2020, Mr. Rock spoke at a meeting and suggested a new small project.  He stated that he doesn't know who this work would be assigned to, but that it should be assigned to someone that has "the ability to do it quickly." This statement was understood by everyone in the room to target Plaintiff.

45. Despite Ms. Lick's and Mr. Rock's comments, on March 25, 2020, Plaintiff checked the team's project tracker and noticed that he had completed 13 of the 28 total tasks for the entire team during the last work period.  This amounts to 46.4% of all the work completed, on a team with several members.

46. Ms. Lick held her quarterly review of Plaintiff on March 25, 2020, as well. During this meeting, Ms. Lick read from a prewritten statement that Plaintiff "continued to struggle."   Ms. Lick's statement did not acknowledge that Plaintiff completed nearly half of the tasks from the preceding work period.

47. On or about March 27, 2020, Plaintiff cooperated with a Human Resources investigation conducted by a third-party company hired by Defendant to investigate his complaints regarding Ms. Lick. He forwarded screenshots and documentation providing, among other things, that Ms. Lick falsely accused Plaintiff of refusing help, that Plaintiff was completing nearly half of the entire team's work, and that other employees on the team are permitted to skip portions of their tasks or carry them over to subsequent work periods in a way that Plaintiff is not.

48. On or about May 1, 2020, Ms. Lick held a 1-on-1 progress meeting with Plaintiff. She commended Plaintiff for completing work so quickly.

49. During the period of May 13 – 18, 2020, Plaintiff was assigned to work on and report back regarding the "front end" work regarding a project.

50. During a meeting regarding this project with the entire team, Plaintiff was blamed for a failure of other employees in implementing a system to convert Microsoft Word documents into formatted HTML which could be displayed online.

51. On May 28, 2020, Defendant placed Plaintiff on a Performance Improvement Plan. Ms. Lick stated that Defendant's next action would be termination of employment.

52. On May 29, 2020, Defendant acknowledged that the Performance Improvement Plan could not be satisfied under any circumstances, and submitted his resignation.

## IV.   COUNT ONE

## RACIAL DISCRIMINATION

53. Plaintiff incorporates by reference as if fully set forth hererin the allegations contained in Paragraphs 1 – 52, above.

54. Plaintiff is an African-American man.

55. Plaintiff performed all job duties assigned by Defendant.

56. Defendant discriminated against Plaintiff by placing him on a Performance Improvement Plan for behaviors which white coworkers also engaged in.

57. Those white employees were not placed on Performance Improvement Plans for engaging in the same behaviors as Plaintiff.

58. Plaintiff's race was the determining factor or a motivating factor in Defendant placing Plaintiff on a Performance Improvement Plan.

59. Defendant, its agents and employees, created discriminatory and intolerable working conditions for Plaintiff.

60. A reasonable person in Plaintiff's position would have felt compelled to resign under these conditions.

61. Plaintiff did in fact resign from his position because of these conditions.

62. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

63. Defendant's unlawful actions were intentional, willful, malicious, and done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

## V.   COUNT TWO

## SECTION 1981

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 – 62, above.

65. Defendant discriminated against Plaintiff by placing him on a Performance Improvement Plan on the basis of his race.

66. Plaintiff's race was the determining factor or a motivating factor in Defendant's adverse employment action.

67. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

68. Defendant's unlawful actions were intentional, willful, malicious, and done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

A. Back pay equal to the amount of wages Plaintiff would have received from May 29, 2020, to the date of judgment, along with other lost benefits such as insurance, paid time off, and retirement contributions;

B. Either (1) reinstatement if feasible under the circumstances; or (2) if reinstatement is not feasible, front pay, along with other lost benefits, for a reasonable period of time for Plaintiff to acquire comparable subsequent employment;

C. Compensatory damages for medical and psychological treatments received as a result of discrimination as well as for costs incurred in as a result of discrimination;

D. Reasonable attorney's fees and costs in this action as allowed by statute;

E. Pre- and Post-judgment interest at the maximum rates allowable by law; and

F.  Additional relief as the Court deems proper and just.

Respectfully submitted this 29th day of December, 2021.

ATTORNEY FOR PLAINTIFF

/s/ Oscar E. Prioleau, Jr., Esq.

Oscar E. Prioleau, Jr., Esq.
Georgia Bar No. 588510
Prioleau & Milfort, LLC
3800 Camp Creek Pkwy
Building 1800, Suite 124
Atlanta, GA 30331
(404) 526-9400 (telephone)
(404) 920-3330 (facsimile)
oscar@pmlawteam.com